1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 6/3/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GENE SCHAFER,<br><br>          Plaintiff,<br><br>     vs.<br><br>BEN CURRY, et al.,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. C 08-1881 RMW (PR)<br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS; GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT; AND<br>REFERRING CASE TO PRO SE<br>PRISONER SETTLEMENT<br>PROGRAM<br><br>(Docket Nos. 38, 39, 47, and 48) |

Plaintiff Daniel Schafer, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at the Correctional Training Facility ("CTF"), where he was formerly housed. Defendants moved to dismiss plaintiff's complaint for failure to exhaust administrative remedies. They also moved for summary judgment, arguing that there was no genuine issue of material fact and that they were entitled to the judgment as a matter of law. Plaintiff opposed both motions, and defendants filed a reply. Having carefully considered the papers submitted, the court hereby DENIES defendants' motion to dismiss and GRANTS in part and DENIES in part defendants' motion for summary judgment, for the reasons set out below.

## BACKGROUND

On May 18, 2007, at 9:26 p.m., plaintiff had an incident with the correctional

1    officers.[1]  Declaration of Emily Brinkman in Support of Defendants' Motion to Dismiss

2    and Motion for Summary Judgment ("Brinkman Decl."), Ex. A at AG 0003.[2]  During the

3    incident, plaintiff was shot in the left foot with a 40 mm baton round and a correctional

4    officer jumped from a staircase and landed on top of plaintiff.  A different officer then

5    pepper-sprayed plaintiff's face and head.  Brinkman Decl., Ex. A at AG 0003.  The

6    correctional officer who landed on top of plaintiff was exposed to some of the pepper

7    spray directed at plaintiff.  He also sustained an injury to his knee.  That officer was

8    treated by nurse Vasquez at 9:50 p.m.  *Id.*, Ex. A at AG 0032.  Plaintiff was examined by

9    defendant Williams, a nurse, at 10:45 p.m.  At the time of the examination, Williams

10    completed a medical report of injury where she noted that plaintiff's face and left foot

11    were red.  *Id.*, Ex. A at AG 0003 and 0033.  The correctional officers took several

12    photographs of plaintiff's left foot.  *Id.*, Ex. A at AG 0031.  Plaintiff was decontaminated

---

[1]  The facts stated herein are undisputed unless otherwise noted.

[2]  Plaintiff objects to two exhibits attached to the Brinkman declaration -- exhibit A (a copy of the incident report, log number CTF-NOR-07-05-0181) and exhibit D (copies of the general chronos for plaintiff from May 10, 2007 through May 22, 2007) -- as irrelevant, inflammatory and/or prejudicial.  Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to Exhaust; and Opposition to Defendants' Motion for Summary Judgment (and not Entitled to Qualified Immunity); Memorandum of Points and Authorities ("Pl's MPA"), at 34.  Defendants do not respond to plaintiff's objection.

      When seeking summary judgment, a party may submit affidavits that are based on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the contents of the affidavit.  *See* Fed. R. Civ. P. 56(e).  Exhibits that do not conform to Rule 56 may be stricken from the record.  *See United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 51 (D.D.C. 2006) (a district court may "strike all or part of an affidavit for failing to satisfy the requirements of Federal Rule of Civil Procedure 56(e)").  With respect to exhibit A, the court finds that plaintiff's objection is unwarranted for two reasons.  First, plaintiff himself attaches portions of the incident report to his declaration and relies on them in his opposition.  *See* Declaration of Daniel Gene Schafer in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to Exhaust; and Opposition to Defendants' Motion for Summary Judgment ("Schafer Decl."), Ex. B.  Second, portions of the report are relevant to the claims of deliberate indifference on behalf of defendant Williams.  *See, e.g.*, Brinkman Decl., Ex. A at AG 0003 and 0033.  With respect to exhibit D, the court sustains plaintiff's objection.  This exhibit is irrelevant, and defendants do not rely on it in their motion.  It is also unfairly prejudicial.  Accordingly, the court STRIKES exhibit D from the record.

1  from exposure to the pepper spray.  He was not provided with any other treatment, nor
2  did he receive any medication.  *Id.*, Ex. A at AG 0033.  Following the examination and
3  decontamination, plaintiff could not walk on his left foot and had to be driven to
4  administrative segregation "via a transportation vehicle."  Complaint at 3-4.[3]  On multiple
5  occasions during the next two days, plaintiff and correctional officers informed three John
6  Doe nurses and defendant Payne (also a nurse) that plaintiff's left foot was broken,
7  swollen, purple, and extremely painful.  Complaint at 4-5.  Plaintiff did not receive either
8  treatment or medication.  *Id.*

9      On May 20, 2007, plaintiff submitted a Health Care Services Request Form where
10  he described his need for services as follows: "My foot is obviously broken and I havent
11  [sic] been seen nor given treatment for 48 hours already I've showed (2) nurses who both
12  said its broke [sic] but have not been seen still."  Declaration of J. Chudy In Support of
13  Defendants' Motion to Dismiss and Motion for Summary Judgment ("Chudy Decl."), Ex.
14  A at MED 0006.  The triage nurse (identified in plaintiff's complaint as John Doe)
15  completed the form, indicating that plaintiff's pain scale was ten on the scale of one to
16  ten.  However, the nurse did not schedule an appointment for plaintiff to be seen by a
17  doctor until May 31, 2007.  *Id.*

18      Plaintiff and correctional officers continued to notify medical staff of plaintiff's
19  broken foot on May 21, 22, 23, and 24.  Complaint at 4-5.  Again, neither treatment nor
20  pain medication was provided.[4]  *Id.*  A John Doe nurse gave plaintiff one aspirin and
21  informed him that there was no doctor in the prison, and thus, there was nothing he could

22

23      [3]  A verified complaint may be used as an opposing affidavit under Rule 56, if, as is the case
24  with the complaint here, it is based on personal knowledge and sets forth specific facts
    admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).
25

26      [4]  During an interview by defendant Britt on July 5, 2007, Payne apparently disputed
    plaintiff's account stating that plaintiff was seen on May 22, 2007 and given an ice pack for a
27  swollen foot and Motrin for pain.  Declaration of Patrick A. Santiago in Support of Defendants'
    Motion to Dismiss and Motion for Summary Judgment ("Santiago Decl."), Ex. B at APP 0009.
28  Neither Payne nor Britt submitted an affidavit with their motion.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    3

do for plaintiff's foot.  *Id*.

Plaintiff and correctional officers notified medical staff of plaintiff's broken foot again on May 25.  *Id*. at 5.  That day, plaintiff was finally seen by nurse Lopez, physician's assistant J. Trent and Dr. Kalisher.  Chudy Decl., ¶¶ 6-8.  The notes from the visit indicate that plaintiff's left foot was swollen, painful and purple, and that plaintiff reported having injured it during an incident with correctional officers seven days earlier.  *Id*., Ex. A at MED 0008, 0010, 0012, 0013.  An x-ray taken on the same date showed that plaintiff's left foot was broken.  Dr. Kalisher ordered the foot to be wrapped in an ace bandage and placed in a post-operative shoe, and prescribed Motrin for pain.  Dr. Kalisher's orders were carried out, except plaintiff was not administered Motrin or any other painkiller until May 29.[5]  *Id*., Ex. A at MED 0014.

On June 13, plaintiff was seen by Dr. Aung, who ordered plaintiff to see Dr. Sinnaco for possible casting.  *Id*., ¶ 12.  On June 14, Dr. Sinnaco ordered plaintiff's foot to be put in a leg cast for six weeks and referred plaintiff to an orthopedist.  Plaintiff was also provided crutches at the time.  *Id*., ¶ 13.  Plaintiff's foot was x-rayed again on July 26, 2007.  The x-ray showed that the foot was "possibly healing," but it was difficult to determine one way or the other through the cast.  *Id*., Ex. A at MED 0028.  The cast was removed on July 31, 2007.  In the following months, plaintiff was seen by several doctors.  He complained of continuing pain in the left foot.  *Id*., Ex. A at MED 0029-32, 0035-36.  An x-ray taken on November 20 showed that plaintiff's foot had "[e]ssentially healed."  *Id*., Ex. A at MED 0037.

Of particular relevance to defendants' motion to dismiss are the steps plaintiff took to obtain relief under the administrative remedies provided by the California Department of Corrections.  *See* Cal. Code Reg. Tit. 15, § 3084.1.  The State of California provides its inmates the right to appeal administratively "any departmental decision, action, condition,

---

[5]  On May 27, plaintiff sent another Health Care Services Request Form, requesting the "prescribed pain killers for broken foot."  *Id*., Ex. A at MED 0017.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd     4

1   or policy which they can demonstrate as having an adverse effect upon their welfare."

2   *See id.* at § 3084.1(a).  Under the California grievance system, inmates may obtain

3   prospective relief, but not monetary damages.  *See Rumbles v. Hill*, 182 F.3d 1064, 1068

4   (9th Cir. 1999).  Most appeals progress from an informal review through three formal

5   levels of review.  *See* Cal Code Reg. Tit. 15, § 3084.5.  A decision at the third formal

6   level, also referred to as the director's level, concludes a prisoner's administrative

7   remedy.  *See* Cal Code Reg. Tit. 15, § 3084.1(a) and 3084.5(e)(2).

8       On May 27, 2007, plaintiff filed a grievance log number CTF-S-07-02081 on Form

9   CDC 602 based on his concern about the medical services, or lack thereof, that he

10   received from May 18 through May 25, 2007.  Santiago Decl., Ex. B at APP 0015-18.

11   The section where plaintiff was asked to "describe problem" began as follows:  "The

12   following submission is in regards to the deprevation [sic] of constitutionally protected

13   rights as well as state mandated provisions with respects [sic] to medical care, leading to

14   petitioners [sic] justifiable initiation of a 42 USC 1983 [sic] civil rights claim.  Further -

15   state tort action will be initiated for an award for [sic] damages."  *Id.*, Ex. B at APP 0015.

16   The paragraph ended as follows:  "STATEMENT OF FACTS: 1) on 5/18/07 (see

17   additional attached sheet)[.]"  Plaintiff attached two sheets to the grievance.  At the top of

18   the first sheet, plaintiff noted "(cont.)" and continued the first paragraph of his "statement

19   of facts,"explaining how he broke his left foot, when, how and whom he requested

20   treatment from and the treatment or lack thereof that he received.  *Id.*, Ex. B at APP 0017-

21   18.  In the "action requested" section, plaintiff requested monetary damages and the

22   prescribed pain relievers to be administered to him without delay.  *Id.*, Ex. B at APP

23   0015.  Plaintiff did not identify any of the medical staff by name.

24       In July 2007, plaintiff was informed that his grievance was processed as a "staff

25   complaint."  *Id.*, Ex. B at APP 0006-07.  In accordance with the procedures for staff

26   complaints, the prison bypassed the informal level of review.  *Id.*, Ex. B at APP 0011.

27   The grievance was partially granted at the first level of review as the prison agreed to

28   conduct an investigation into plaintiff's allegations.  *Id.*, Ex. B at APP 0009.  Plaintiff was

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd     5

1   informed that the result of the investigation was confidential and would not be shared

2   with him.  *Id*., Ex. B at APP 0008.  He was also informed that to exhaust his staff

3   complaint, he must submit it through all levels of review up to, and including, the

4   director's level.  Once a decision has been rendered at the director's level, his

5   administrative remedies would be considered exhausted.  *Id.*, Ex. B at APP 0006.  The

6   first level decision was signed by defendants Britt and Anderson.[6]  *Id.*, Ex. B at APP

7   0007.

8           Unsatisfied with the first level of review, plaintiff submitted his grievance to the

9   second level of review, where it was once again partially granted in that a confidential

10  investigation into plaintiff's allegations was conducted.  Santiago Decl., Ex. B at APP

11  0012-14.  The decision was signed by defendant K. Sather for defendant J. Chudy.  *Id.*

12  Plaintiff submitted his grievance to the third and final level of formal review, the

13  director's level.  It was denied, and plaintiff was informed that he had exhausted his

14  administrative remedies.  *Id*., Ex. B at APP 0021-22.

15          Plaintiff filed his complaint in the instant action on April 8, 2008.  Plaintiff

16  claimed that defendants were deliberately indifferent to his serious medical needs in

17  violation of the Eighth Amendment right to be free from cruel and unusual punishment,

18  and committed medical negligence under California state law.[7]  Plaintiff named six

19  individual members of the medical staff and the warden of CTF as defendants.

20  Defendants filed a motion to dismiss for failure to exhaust administrative remedies and a

21  motion for summary judgment.  The court will address each motion in turn.

22          **DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST**

23  **I.**   **Legal Standard**

24          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

25

26      [6] Defendant Anderson signed for "K. Sather, Chief Medical Officer."  *Id*.  Defendants claim
    that Sather was a Chief Dental Officer at the time.  Declaration of Dan Pherigo in Support of

27  Defendants' Motion to Dismiss and Motion for Summary Judgment, ¶ 4.

28      [7] While screening plaintiff's complaint, the court dismissed his due process claim.  July 3,
    2008 Order of Service.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   6

1    brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

2    law, by a prisoner confined in any jail, prison, or other correctional facility until such

3    administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).

4         Nonexhaustion under § 1997e(a) is an affirmative defense, that is defendants have

5    the burden of raising and proving the absence of exhaustion.  *Wyatt v. Terhune*, 315 F.3d

6    1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust

7    administrative remedies, the court may look beyond the pleadings and decide disputed

8    issues of fact.  *Id*. at 1119-20.  If the court concludes that the prisoner has not exhausted

9    nonjudicial remedies, the proper remedy is dismissal without prejudice.  *Id*. at 1120.

10   **II.   <u>Analysis</u>**

11        On May 27, 2007, plaintiff filed his only grievance regarding his medical care for

12   the broken left foot.  Santiago Decl., Ex. B at APP 0015-18 (grievance log number CTF-

13   S-07-02081).  Plaintiff pursued it through the director's level before filing this lawsuit.

14   *Id*., Ex. B at APP 0021-22.  Defendants concede that plaintiff has fully exhausted the

15   claims presented in this grievance.  Defendants' Notice of Motion to Dismiss for Failure

16   to Exhaust and Motion for Summary Judgment; Memorandum of Points and Authorities

17   ("Defs' MPA") at 12; Defendants' Reply to Plaintiff's Opposition to Defendants' Motion

18   to Dismiss and Motion for Summary Judgment ("Defs' Reply") at 3.  Accordingly,

19   defendants' motion to dismiss hinges on whether this grievance was sufficient to exhaust

20   plaintiff's administrative remedies with respect to the claims presented in this action.

21   Defendants claim that the grievance was insufficient for the following reasons:  (1)

22   plaintiff did not describe how the medical care following the May 18, 2009 incident was

23   deficient; (2) he did not identify any specific individuals; and (3) the subject of the

24   administrative grievance was separate and distinct from the claims in the instant suit.

25   Therefore, defendants argue, plaintiff's grievance did not put them on notice of the claims

26   asserted in the instant suit.  Defs' MPA at 12-13.

27        The court finds defendants' arguments lack merit.  First, plaintiff's grievance

28   described in great detail how plaintiff's foot looked and felt, plaintiff's repeated requests

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    7

1 for treatment, correctional officers' repeated requests for treatment on behalf of plaintiff,

2 medical staff's responses or lack thereof, and finally, the treatment plaintiff received on

3 May 25, 2007 and reasons why plaintiff thought it was inadequate.  Santiago Decl., Ex B

4 at APP 0017-18.  Plaintiff specified the dates of requests and the number of requests each

5 day.  Plaintiff also described the health services request that he submitted and the triage

6 nurse's response to his request.  *Id.*  It is difficult to imagine a more thorough explanation

7 of the alleged deficiencies in the medical care plaintiff had received.

8         Second, although plaintiff has not specifically identified defendants in his

9 grievance, that is of no import to resolving the pending motion to dismiss.  In *Jones v.*

10 *Bock*, 549 U.S. 199, 219 (2007), the Supreme Court has indicated that "exhaustion is not

11 *per se* inadequate simply because an individual later sued was not named in the

12 grievances."  The Court held that because the Michigan Department of Corrections'

13 procedures made no mention of naming particular officials, the Sixth Circuit's rule

14 imposing such a prerequisite to proper exhaustion was unwarranted.  The Court reasoned

15 that the purpose underlying the exhaustion requirement and the grievance "is to alert

16 prison officials to a problem, not to provide personal notice to a particular official that he

17 may be sued; the grievance process is not a summons and complaint that initiates

18 adversarial litigation."  *Id.* (citation and quotation marks omitted).

19         The California form, like the Michigan one, does not require an inmate to identify

20 any specific individuals.  Instead, it asks him to "describe problem" and "action

21 requested."  *See* Santiago Decl., Ex B at APP 0004.  In his grievance, plaintiff described

22 his problem in detail and identified the action he was requesting.  That is all that the

23 PLRA requires of him.  *See Jones*, 549 U.S. at 219; *see also Butler v. Rianda*, 397 F.3d

24 1181, 1183 (9th Cir. 2005) (California prisoner exhausted administrative remedies by

25 filling out an ADA accommodation form even though he did not identify the wrongdoers

26 on the form because the form asked him to "describe the problem" and declare "what

27 specific modification or accommodation is requested," but did not require him to identify

28 any specific persons).

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    8

1   Defendants' third and final argument is not very clear.  They concede that

2   plaintiff's grievance was related both to medical staff and treatment they provided.  Defs'

3   Reply at 3.  However, they argue that because plaintiff's grievance was processed as a

4   staff complaint, the prison officials would have only been concerned with the actions of

5   medical staff and not with the care they provided,[8] and therefore, plaintiff should have

6   filed a separate, additional grievance just with respect to the medical care he received.

7   *See* Defs' MPA at 12-13; Defs' Reply at 4.[9]  And in an apparent contradiction, they claim

8   that plaintiff's grievance did not deal with the underlying basis of his complaint against

9   defendants in this case -- that they provided him inadequate medical care.  *See* Defs'

10  MPA at 12-13.

11      In *Brown v. Valoff*, 422 F.3d 926, 937-40 (9th Cir. 2005), the Ninth Circuit held

12  that where a claim contained in an inmate's grievance was characterized by prison

13  officials as a "staff complaint" and a confidential investigation was launched into the staff

14  misconduct, no further relief remained "available" to the inmate through the appeals

15  process and the claims in his or her grievance were considered exhausted.  If there were

16  separate claims in the same grievance for which further administrative review could

17  provide relief, prison regulations required that the prisoner be notified that such claims

18  must be appealed separately.  *Id.* at 939.  The court might presume that the absence of

19  such a notice indicated that the grievance did not present any claims which could be

20  appealed separately from the confidential "staff complaint" process.  *Id.*; *see also Guy v.*

21  *Kimbrell*, Case No. CIV S-03-1208-JAM-CMK-P, 2008 WL 2774184, at *5 (E.D. Cal.

22  June 27, 2008).

23

24      [8]  The court is unsure what is the difference in this particular case between the actions of
25  medical staff and the care they did or did not provide.

26      [9]  Defendants also argue that during the second level of review, plaintiff's grievance "related
27  more" to the investigation conducted by defendants, rather than the treatment or lack thereof.
    *See* Defs' MPA at 13.  The court does not see any relevance to this argument, since defendants
28  concede that plaintiff exhausted issues set forth in his grievance log number CTF-S-07-02081.
    *See* Defs' MPA at 12; Defs' Reply at 3.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    9

Applying *Brown* to the facts of the instant case, the court finds that defendants' final argument fails. As in *Brown*, plaintiff's appeal was designated a staff complaint; the first and second level decisions partially granted the appeal by ordering an investigation; the decisions informed plaintiff that any disciplinary action taken against the medical staff would be confidential; and the decisions did not counsel plaintiff that any further review was available.[10] In fact, plaintiff went further than plaintiff in *Brown* and appealed the grievance through all levels of review, including the director's level. The parties agree that plaintiff has exhausted his administrative remedies for grievance log number CTF-S-07-02081. *See* Defs' MPA at 12; Defs' Reply at 3. There is no evidence in the record that plaintiff was notified that any further relief was available to him.[11]

Furthermore, the court finds that plaintiff's appeal did not include any separate issues. Throughout his grievance, plaintiff has continuously maintained that he has received no treatment for his broken foot between May 18 and May 25, 2007, and inadequate treatment on May 25, 2007. Any misconduct by the medical staff was part and parcel of the inadequate medical treatment claim plaintiff notified prison officials about in his grievance. *See Harris v. Duc*, Case No. CIV S-06-2138 JAM DAD P, 2008

---

[10] Although the director's level decision advised plaintiff that he had "added new issues and requests to his appeals" and that the "additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action" (*see* Santiago Decl., Ex. B at APP 0022), the court assumes this language cannot relate to the medical care, or lack thereof, for plaintiff's broken left foot since plaintiff complained of it in the initial grievance.

[11] With their reply, defendants attach a copy of the notice that is sent to an inmate "[i]f appeals officials decides [sic] to treat an inmate's grievance as a staff complaint." *See* Declaration of Patrick Santiago in Support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment ("Reply Santiago Decl."), ¶ 4 & Ex. A. The notice provides, *inter alia*, that "[i]f appeal includes issues such as property-complaints, disciplinary actions, etc., must be appealed separately." *Id.*, Ex. A. Santiago declares that "[t]hese notices are generally not kept in the usual course of business." *Id.*, ¶ 4. The court finds this evidence inadequate to establish that this particular plaintiff has received the notice. *See Wyatt*, 315 F.3d at 1120 (finding documents produced by defendants inadequate to establish plaintiff failed to exhaust); *Rojas v. Loza*, Case No. C 07-4662 MMC (PR), 2008 WL 5056525, at *5-6 (N.D. Cal. Nov. 24, 2008) (same).

1   WL 3850214, at *5 n.6 (E.D. Cal. Aug. 15, 2008) (although plaintiff's grievance dealt

2   primarily with plaintiff's triceps injury and not specifically with plaintiff's subsequent

3   back injury, the court found that plaintiff exhausted his administrative remedies because

4   plaintiff's claim for inadequate medical care regarding his back injury was part and parcel

5   of his claim of ongoing inadequate medical care with respect to his triceps injury).[12]

6   Plaintiff did not separately claim that medical staff confiscated his property, failed to

7   protect him from another inmate, failed to diagnose some other disease, or harassed him.

8   *Cf. Brown*, 422 F.3d at 940-43 (an inmate who was informed at the second level that any

9   non-staff claims should be separately appealed, that if he were dissatisfied further review

10  was available, that the appeal was denied, rather than partially granted, and whose

11  grievance included excessive force, inadequate medical care and confiscation of property

12  claims, did not exhaust all available remedies).  Plaintiff presents the very same claim --

13  lack of treatment for the broken foot from May 18 to May 25, 2007 and inadequate

14  treatment on May 25, 2007 -- in his complaint before this court.

15      Such result is supported by the purpose underlying the exhaustion requirement --

16  to allow prison officials to receive notice of complaints so that they can take proper

17  action.  *Jones*, 549 U.S. at 217-18.  In the instant case, prison officials would not have

18  been any more aware of the problem about which plaintiff was complaining had he filed

19  an additional grievance on the same subject.  Defendants claim that once plaintiff's

20  grievance was processed as a staff complaint, he should have filed a separate grievance

21  with respect to medical care.  They also claim that if plaintiff filed such a grievance, it

22

23      [12]  *See also Gomez v. Winslow*, 177 F. Supp. 2d 977, 982-83 (N.D. Cal. 2001) (refusing to

24  break down a complaint of inadequate medical treatment into distinct claims of failures and
    finding that plaintiff need not have filed a separate grievance as to each claim of failure);

25  *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 278-79 (D. Conn. 2001) (declining to require
    exhaustion of new issues in medical care that arose from the "same series of events" concerning

26  medical care that had already been exhausted); *Giano v. Goord*, 380 F.3d 670, 679 (2d Cir.
    2004) ("Though, according to defendants, [plaintiff] could actually have pursued a separate

27  grievance, we believe that it was reasonable for him to think that direct appeal of his disciplinary
    conviction was his only available remedy.  Accordingly, we hold that his failure to exhaust was

28  justified.").

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   11

1   would not have been screened out as duplicate.  *See* Reply Santiago Decl., ¶ 7.  First, this

2   is hypothesis, rather than evidence.  Second, defendants do not indicate which magical

3   language plaintiff needed to use so that his grievance was not processed as a staff

4   complaint, but instead was processed as a medical care grievance.  After all, plaintiff was

5   not requesting medical staff to be disciplined or an investigation into their misconduct to

6   be launched.  Instead, he was requesting monetary damages and to be administered

7   medication that was prescribed to him.  Santiago Decl., Ex. B at APP 0015.  Accordingly,

8   the court finds that plaintiff's allegations against defendants are encompassed in his

9   administrative grievance, which he properly exhausted prior to filing suit.

10      Defendants have the burden to raise and prove the affirmative defense of failure to

11   exhaust administrative remedies.  *See Wyatt*, 315 F.3d at 1117-19 & nn. 9 & 13.  They

12   have not carried their burden in this case.  Therefore, defendants' motion to dismiss is

13   DENIED.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.   <u>Legal Standard</u>

16      Summary judgment is proper where the pleadings, discovery and affidavits

17   demonstrate that there is "no genuine issue as to any material fact and that the moving

18   party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are

19   those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477

20   U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

21   evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

22      The party moving for summary judgment bears the initial burden of identifying

23   those portions of the pleadings, discovery and affidavits which demonstrate the absence

24   of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

25   Where the moving party will have the burden of proof on an issue at trial, it must

26   affirmatively demonstrate that no reasonable trier of fact could find other than for the

27   moving party.  But on an issue for which the opposing party will have the burden of proof

28   at trial, the moving party need only point out "that there is an absence of evidence to

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    12

1  support the nonmoving party's case." *Id*. at 325.

2      Once the moving party meets its initial burden, the nonmoving party must go

3  beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts

4  showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only

5  concerned with disputes over material facts and "factual disputes that are irrelevant or

6  unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the

7  court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91

8  F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying,

9  with reasonable particularity, the evidence that precludes summary judgment. *Id*.  If the

10  nonmoving party fails to make this showing, "the moving party is entitled to judgment as

11  a matter of law." *Celotex Corp.*, 477 U.S. at 323.

12  **II.    Analysis**

13      Plaintiff makes two claims:  (1) defendants were deliberately indifferent to his

14  serious medical needs in violation of the Eighth Amendment right to be free from cruel

15  and unusual punishment, and (2) defendants committed medical negligence under

16  California state law.

17          *A.    Deliberate Indifference to Medical Needs*

18      Prisoners can establish an Eighth Amendment violation with respect to medical

19  care if they can prove there has been deliberate indifference to their serious medical

20  needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050,

21  1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104

22  F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference"

23  involves an examination of two elements:  the seriousness of the prisoner's medical need

24  and the nature of the defendants' response to that need. *McGuckin*, 974 F.2d at 1059.

25      A "serious" medical need exists if the failure to treat a prisoner's condition could

26  result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.*

27  (citing *Estelle*, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or

28  patient would find important and worthy of comment or treatment; the presence of a

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   13

1  medical condition that significantly affects an individual's daily activities; or the

2  existence of chronic and substantial pain are examples of indications that a prisoner has a

3  "serious" need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900

4  F.2d 1332, 1337-41 (9th Cir. 1990)).

5      A prison official is deliberately indifferent if he knows that a prisoner faces a

6  substantial risk of serious harm and disregards that risk by failing to take reasonable steps

7  to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not

8  only "be aware of facts from which the inference could be drawn that a substantial risk of

9  serious harm exists," but he "must also draw the inference." *Id.* If a prison official

10  should have been aware of the risk, but was not, then the official has not violated the

11  Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290

12  F.3d 1175, 1188 (9th Cir. 2002).

13      Once the prerequisites are met, it is up to the factfinder to determine whether

14  deliberate indifference was exhibited by defendants. Such indifference may appear when

15  prison officials deny, delay or intentionally interfere with medical treatment, or it may be

16  shown in the way in which prison officials provide medical care. *McGuckin*, 974 F.2d at

17  1062 (delay of seven months in providing medical care during which medical condition

18  was left virtually untreated and plaintiff was forced to endure "unnecessary pain"

19  sufficient to present colorable § 1983 claim).

20      Plaintiff claims that defendants violated his constitutional rights to adequate

21  medical care by (1) denying him any care for his broken foot for seven days, from May

22  18 to May 25, 2007, and (2) providing him inadequate medical care on May 25, 2007.

23  Complaint at 4-8. Defendants argue that they are entitled to summary judgment on both

24  of these claims because (1) plaintiff has failed to establish that the broken foot he suffered

25  from resulted in substantial harm to him; and (2) plaintiff has failed to establish that any

26  of the defendants acted with a sufficiently culpable state of mind. Defs' MPA at 15. The

27  court will address each of plaintiff's claims in turn.

28          (i)    <u>Denial of Care from May 18 to May 25</u>

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   14

1   In order for deliberate indifference to be established, there must be a purposeful

2   act or failure to act on the part of the defendant and resulting harm. *McGuckin*, 974 F.2d

3   at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.

4   1985). A finding that the defendants' activities resulted in "substantial" harm to the

5   prisoner is not necessary, however. Neither a finding that defendants' actions are

6   egregious nor that they resulted in significant injury to a prisoner is required to establish a

7   violation of the prisoner's federal constitutional rights. *McGuckin*, 974 F.2d at 1060-61

8   (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992) (rejecting "significant injury"

9   requirement and noting that Constitution is violated "whether or not significant injury is

10  evident")). Defendants rely on *Hunt v. Dental Dept*., 865 F.2d 198, 200 (9th Cir. 1989),

11  for the proposition that delay in treatment does not amount to substantial harm. In *Hunt*,

12  plaintiff alleged that prison officials were aware that the loss of his dentures was causing

13  him severe pain, his gums were bleeding, his teeth breaking and he was unable to eat

14  properly, yet they failed to take any action to relieve his pain or prescribe a soft foot diet

15  until new dentures could be fitted. The Ninth Circuit found that although delay in

16  providing a prisoner with dental treatment, standing alone, does not constitute an Eighth

17  amendment violation, plaintiff's allegations were sufficient to state a claim of deliberate

18  medical indifference under section 1983. *Id*. Instead of aiding defendants, *Hunt* actually

19  supports a finding that defendants are not entitled to summary judgment. In the instant

20  case, as in *Hunt*, plaintiff alleged, and provided evidence of, more than simple delay. In

21  fact, plaintiff's circumstances are quite similar to the cases described below where the

22  courts found a constitutional violation.

23   In *Brown v. Hughes*, 894 F.2d 1533, 1536 (11th Cir.1990), an inmate was injured

24  in a fight and suffered two broken bones in his left foot. He reported that he thought his

25  foot was broken, complained of pain and his foot began to swell. His foot became so

26  swollen that medical staff could not put a cast on it. The district court granted summary

27  judgment for the prison officials, concluding that the delay in providing medical care did

28  not rise to a constitutional violation. The Eleventh Circuit reversed, holding that "a

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    15

1  broken foot can be a serious and painful injury" and "a deliberate delay on the order of

2  hours in providing care for a serious and painful broken foot is sufficient to state a

3  constitutional claim."  *Id*. at 1536-38.  Likewise, in *Miller v. Pulaski County Sheriff's*

4  *Dept.*, 30 F.3d 130 (4th Cir. 1994), plaintiff alleged that correctional officers were

5  informed of plaintiff's broken collarbone, resulting pain and inability to sleep; however,

6  they told plaintiff he had to wait for five days until the prison doctor visited the prison to

7  be examined.  The district court dismissed the action.  The Fourth Circuit reversed,

8  finding that plaintiff's allegations were sufficient to assert deliberate indifference and that

9  the district court should have advised plaintiff to amend his complaint to name as

10 defendants the officers who were allegedly aware of his injury and declined to promptly

11 provide medical attention.  In *Minton v. Spann*, No. 5:05cv89-RS/WCS, 2007 WL

12 1099114, at *16-17 (N.D. Fla. Apr. 10, 2007), the court reached a similar result by

13 denying defendants' motion for summary judgment as to plaintiff's claim that defendants

14 delayed treatment for his broken ankle by 24 hours.[13]

15    Here, plaintiff presented evidence that he broke his left foot on May 18, 2007 and

16 that at least some defendants were aware of it on that day or shortly thereafter.  A broken

17 _____

18    [13] *See also Steele v. Choi*, 82 F.3d 175, 179 (7th Cir.1996) ("[i]f the symptoms plainly called
    for a particular medical treatment -- the leg is broken, so it must be set . . . -- a doctor's

19  deliberate decision not to furnish the treatment might be actionable under § 1983"); *Hughes v.
    Noble*, 295 F.2d 495 (5th Cir. 1961) (thirteen-hour delay for broken and dislocated cervical

20  vertebrae is actionable); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978) (holding that prisoner
    stated § 1983 claim when he alleged that, with deliberate indifference, defendants failed to have

21  broken arm examined by a doctor until eleven hours after injury and failed to have arm x-rayed
    until twenty-two hours after injury).

22    Defendants also rely on *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) and *O'Loughlin v.
    Doe*, 920 F.2d 614, 617 (9th Cir. 1990).  In *Frost*, the Ninth Circuit found "no merit in Frost's

23  claims stemming from alleged delays in administering his pain medication, in treating his broken
    nose, and in providing him with a replacement crutch."  152 F.3d at 1130.  The court neither

24  elaborated on plaintiff's allegations nor provided an analysis of this claim.  Likewise in

25  *O'Loughlin*, the Ninth Circuit noted that "isolated occurrences of neglect" such as "repeatedly
    failing to satisfy [plaintiff's] requests for aspirins and antacids to alleviate his 'headaches, nausea

26  and pains'" did not amount to a constitutional violation.  920 F.2d at 617.  Again, the court did
    not elaborate on plaintiff's allegations nor provided an analysis of this claim.  Neither *Frost* nor

27  *O'Loughlin* is as factually on point and reasoned (with respect to this one issue) as *Brown*,
    *Miller*, and *Minton*.

28

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   16

---

foot is a type of injury that a reasonable doctor or patient would find important to treat. Plaintiff presented evidence that the broken foot has significantly affected his daily activities, in particular, plaintiff had a difficulty walking; that the broken foot caused plaintiff to suffer intense pain; that both plaintiff and correctional officers made multiple requests of medical staff to provide treatment and pain medication to plaintiff; and that the fracture in the foot was so serious that it did not heal until six months later. At the same time, plaintiff presented evidence that he was denied any treatment or pain medication for seven days. Construing all facts and inferences in the light most favorable to plaintiff as the non-moving party, the court finds that plaintiff presented sufficient evidence to establish a genuine issue of material fact whether he had a serious medical need and whether defendants were deliberately indifferent by denying him treatment for seven days from May 18 to May 25, 2007.

Having concluded that this claim should survive summary judgment and go to trial, the court must decide who is potentially liable for not providing initial treatment for plaintiff's broken foot.

### (a)   Defendant Williams

With respect to defendant Williams, plaintiff has submitted the following evidence: plaintiff was injured in the incident with correctional officers at 9:26 p.m.; he was evaluated by Williams at 10:45 p.m.; Williams noted that plaintiff's left foot was red; she was aware plaintiff was shot in the left foot by a 40 mm direct impact round; correctional officers photographed plaintiff's left foot extensively;[14] plaintiff's foot was injured so badly that he could not walk and had to be "transported to" administrative segregation via "a transportation vehicle"; and yet Williams failed to administer any treatment or medication for the foot or schedule an examination by a doctor. *See* Brinkman Decl., Ex. A at AG 0003, 0031-33; Complaint at 3-4. Defendants do not dispute this evidence. Instead, they argue that there is nothing to indicate that Williams

---

[14] The court infers from this evidence that the injury to the left foot was obvious.

1  needed to provide any treatment for the foot or further evaluation. Defs' MPA at 17. The

2  court disagrees and finds that there is a genuine issue of material fact whether Williams

3  knew of plaintiff's injury, resulting pain, and inability to walk and deliberately denied

4  him treatment and further evaluation. Consequently, Williams is not entitled to summary

5  judgment.

6                              (b)    Defendant Payne

7        With respect to defendant Payne, plaintiff has submitted the following evidence:

8  on the day of the incident, correctional officers notified Payne and three John Doe nurses

9  that plaintiff's foot was broken, swollen and purple, and plaintiff suffered from extreme

10  pain.[15]  Complaint at 4.  Payne and three John Doe nurses stated that there was nothing

11  they could do because there was no doctor.  In addition, Payne has told defendant Britt

12  during the investigation that plaintiff "was seen 5/22/07 & was given ice pack for swollen

13  ft and Motrin for pain." Santiago Decl., Ex. B at APP 0009.  Plaintiff denies that he

14  received either ice pack or Motrin.  *See* Pl's MPA at 11; Complaint at 4-5.  Thus, there is

15  a genuine issue of material fact whether Payne was aware of plaintiff's injury, whether

16  she deliberately denied plaintiff treatment, and whether she was deliberately indifferent

17  by not sending plaintiff to see a physician.  Consequently, Payne is not entitled to

18  summary judgment.[16]

19

20        [15]  Defendants object to the evidence regarding Payne's conversation with correctional
21  officers on May 18 as inadmissible hearsay. Defs' MPA at 18. The court overrules defendants'
    objection.  Payne's conversation is admissible against Payne as a party admission. *See* Fed. R.
22  Evid. 801(d)(2). It is probative of Payne's knowledge of plaintiff's injury.

23        [16]  There is no motion for summary judgment as to three John Doe nurses who plaintiff claims
24  have been notified of his broken foot prior to May 25, 2007, and who allegedly claimed that
    there was nothing they could do for plaintiff. *See* Complaint at 4-5. It appears that one of those
25  John Doe nurses is a triage nurse who saw plaintiff on May 20, and after being informed of a
    broken foot and plaintiff's intense pain, scheduled an appointment for him to see a doctor eleven
26  days later, on May 31, 2007. *See* Pl's MPA at 21-22. Accordingly, these nominal defendants
    stay in the suit as to this claim. However, the court notes that their identities are still unknown
27  and service has never been carried out as to these defendants.
           Plaintiff complains that defendants refused to respond to his discovery, and therefore, he
28  was unable to ascertain the identities of these John Doe defendants.  He attaches defendants'
    Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
    Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
    P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    18

1

        *(c)*    *Defendants Anderson, Chudy, Sather, Britt and Curry*

2           With respect to defendants Anderson (supervising registered nurse), Chudy (chief

3  medical officer), Sather (chief dental officer), Britt (senior registered nurse) and Curry

4  (warden), plaintiff's only claim is that they are liable as supervisors of the medical staff

5  who denied plaintiff's treatment.  *See* Complaint at 7-8.  A supervisor may be liable under

6  section 1983 upon a showing of (1) personal involvement in the constitutional deprivation

7  or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

8  constitutional violation.  *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th

9  Cir. 1991) (en banc) (citation omitted), *cert. denied*, 502 U.S. 1074 (1992).  "A supervisor

10  is only liable for constitutional violations of his subordinates if the supervisor participated

11  in or directed the violations, or knew of the violations and failed to act to prevent them."

12  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Evidence that a prison supervisor

13  was personally involved in an unconstitutional transfer and denied all appeals of the

14  transfer, for example, may suffice, *see Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir.

15  1992), as may evidence that a supervisor implemented "a policy so deficient that the

16  policy itself is a repudiation of constitutional rights and is the moving force of the

17  constitutional violation."  *Redman*, 942 F.2d at 1446.  Under no circumstances is there

18  respondeat superior liability under section 1983, *i.e.*, there is no liability under section

19  1983 solely because one is responsible for the actions or omissions of another.  *See*

20  *Taylor*, 880 F.2d at 1045.

21          Plaintiff has failed to offer any evidence that Anderson, Chudy, Sather, Britt and

22

23  response stating that because plaintiff's request "does not comply with the Federal Rules of Civil
Procedure, Defendants [would] not respond to this request at this time."  Schafer Decl., Ex. E.  In

24  their reply in support of the summary judgment motion, defendants simply state that plaintiff has
had sufficient time to determine the proper parties.

25        To the extent that plaintiff is dissatisfied with defendants' response, his remedy is to file

26  a motion to compel setting forth the basis of the discovery dispute.  *See* Fed. R. Civ. P. 37.  The
court warns defendants that they cannot avoid discovery through the invocation of a general

27  objection.  *See, e.g.*, Fed. R. Civ. P. 33(b)(4) ("[t]he grounds for objecting to an interrogatory
must be stated with specificity"); *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589

28  (W.D.N.Y. 1996) (an objection must be specific and supported by a detailed explanation stating
why the discovery is objectionable).

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   19

1   Curry participated in denial of treatment or were aware of his injury during the time he

2   was denied treatment (between May 18 and 25).  Likewise, plaintiff has failed to offer

3   any evidence that these defendants implemented a policy of denying and delaying care for

4   the type of injuries plaintiff has sustained.  To the extent plaintiff's claim against these

5   defendants is based on their failure to grant his inmate appeals, their conduct does not

6   amount to deliberate indifference because by May 27, 2007, when plaintiff submitted his

7   inmate appeal, he was already receiving treatment for his broken foot.  Thus, plaintiff has

8   failed to raise an issue of deliberate indifference on the part of Anderson, Chudy, Sather,

9   Britt and Curry, and they are entitled to summary judgment on this claim.

10                  (ii)    Medical Care Plaintiff Received on May 25, 2007

11          Plaintiff also claims that the care he was provided by on May 25, 2007 was

12   inadequate and constituted deliberate indifference to his serious medical needs.  On May

13   25, plaintiff was seen by nurse Lopez, physician's assistant J. Trent and Dr. Kalisher.

14   Trent ordered x-rays which were taken the same day and showed that plaintiff's left foot

15   was broken.  After reviewing the x-rays, Dr. Kalisher ordered plaintiff's left foot to be

16   wrapped in an ace bandage and placed in a post-operative shoe.  He also prescribed

17   Motrin for pain.  Dr. Kalisher's orders were carried out, except plaintiff was not been

18   administered Motrin or any other painkiller until May 29, 2007.  Chudy Decl., ¶¶ 6-8 &

19   Ex. A at MED 0008, 0010, 0012-14.

20          Neither Dr. Kalisher, nor Trent or Lopez are named defendants in this action.

21   However, Dr. Kalisher is described as a John Doe Doctor in plaintiff's complaint.

22   Complaint at 5.  In his opposition to defendants' motion for summary judgment, plaintiff

23   contends that he was previously unaware of Dr. Kalisher's name, but now plans to amend

24   his complaint to add Dr. Kalisher as a defendant.  Pl's MPA at 3.

25          Plaintiff may amend his complaint with leave of court at any time, and such leave

26   "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, leave to

27   amend need not be granted where proposed amendment would be futile.  *See Janicki*

28   *Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).  The court finds that adding Dr.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   20

1  Kalisher as a defendant would be futile, because plaintiff has failed to raise a genuine

2  issue of material fact with respect to deliberate indifference by Dr. Kalisher.

3      "A difference of opinion between a prisoner-patient and prison medical authorities

4  regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d

5  1337, 1344 (9th Cir. 1981).  In order to prevail on a claim involving choices between

6  alternative courses of treatment, plaintiff must show that the course of treatment the

7  doctor chose was medically unacceptable under the circumstances and that he chose this

8  course in conscious disregard of an excessive risk to plaintiff's health.  *See Toguchi v.*

9  *Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

10     None of the events recounted in the complaint and plaintiff's medical records

11  involving Dr. Kalisher (as John Doe Doctor who treated plaintiff on May 25, 2007) are

12  sufficient to support the charge that Dr. Kalisher violated the Eighth Amendment.  The

13  evidence presented merely reflects plaintiff's dissatisfaction and disagreement with the

14  course of treatment provided by Dr. Kalisher.  For instance, plaintiff challenges Dr.

15  Kalisher's decision to place his foot in a post-operative shoe rather than a cast, not to

16  provide him crutches and prescribe him Motrin rather than a stronger pain medication.

17  Plaintiff avers that such conduct is in itself indicative of deliberate indifference because

18  approximately three weeks later another doctor decided to put a cast on plaintiff's left leg,

19  and prescribed crutches and different pain medication.  Complaint at 6.  The court does

20  not agree.  Although another doctor chose to pursue different treatment at a later time,

21  such decision does not necessarily show that the earlier treatment was inadequate.  Where

22  a broken foot does not respond to one course of treatment, it is only reasonable for a

23  doctor to pursue an alternative one.  Plaintiff does not present sufficient evidence to

24  establish a genuine issue of material fact regarding treatment provided by Dr. Kalisher

25  being inadequate.[17]  Defendants, on the other hand, provide evidence that such treatment

26

27  [17] Plaintiff proffers into evidence two pages regarding treatment of a broken foot allegedly found on the Internet. *See* Schafer Decl., Ex. F.  Plaintiff does not provide the Internet address

28  or any other source where these pages can be retrieved.  Defendants object to this evidence as inadmissible.  Defs' Reply at 11.  The court sustains defendants' objection and does not consider
Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   21

1    falls within the range of reasonable treatment for a broken foot.  Chudy Decl., ¶ 10

2    ("Treatment for a fifth metatarsal fracture can vary depending upon the patients signs and

3    symptoms.  Specifically, treatment should create a supportive environment for the foot to

4    heal, which can include a wrapping with an ace bandage and using an orthopedic shoe or

5    boot to limit mobility, all the way to a cast.").  The Constitution is not violated when

6    appropriate medical treatment is provided.

7        Similarly, plaintiff's evidence that he was not provided pain medication prescribed

8    by Dr. Kalisher for 48 hours does not create a genuine issue of material fact that Dr.

9    Kalisher was deliberately indifferent to plaintiff's medical needs.  Plaintiff has not

10   provided any evidence that it was Dr. Kalisher's fault that the medication he prescribed

11   was not administered to plaintiff on the day it was prescribed.  Accordingly, the court

12   DENIES plaintiff's request to amend his complaint and add Dr. Kalisher as a defendant.[18]

13       **B.    *Medical Negligence***

14       Plaintiff asserts a claim for professional negligence, also referred to as medical

15   malpractice, under California Law.  Complaint at 8-9.  The elements of such a claim are:

16   "(1) the duty of the professional to use such skill, prudence, and diligence as other

17   members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a

18   proximate causal connection between the negligent conduct and the resulting injury; and

19   (4) actual loss or damage resulting from the professional's negligence." *Budd v. Nixen*, 6

20   Cal. 3d 195, 200 (1971), *superseded in irrelevant part by* Cal. Civ. Proc. Code §

21   340.6.  Although prison employees often enjoy immunity from state tort liability,

22   California law expressly provides: "Nothing in this section exonerates a public employee

23   who is lawfully engaged in the practice of one of the healing arts under any law of this

24

_____

25   this evidence.  Even if this evidence were admissible, it would not help establish that Dr.

26   Kalisher's treatment did not fall within the range of acceptable treatment.

27   [18]  Because the court finds that plaintiff did not present sufficient evidence to establish a
     genuine issue of material fact with respect to the treatment plaintiff received on May 25, 2007,

28   defendants Anderson, Chudy, Sather, Britt and Curry (as alleged supervisors of Dr. Kalisher) are
     entitled to summary judgment on this claim as well.

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   22

1    state from liability for injury proximately caused by malpractice." Cal. Gov't Code §

2    845.6 (West 2008).

3        Defendants argue that they exercised reasonable prudence and diligence in

4    providing medical care to plaintiff, and therefore did not breach their duty of care to him.

5    The evidence in the record, described in detail above, supports the conclusion that there

6    are genuine issues of material fact with respect to defendants Williams and Payne being

7    negligent in denying treatment of plaintiff's broken foot for seven days.  Therefore, the

8    court DENIES summary judgment to defendants Williams and Payne on this claim.  The

9    court GRANTS summary judgment to the remaining defendants on this claim because

10    there is no evidence that they provided medical care to plaintiff or were negligent in

11    doing so.

12        *C.    Qualified Immunity*

13        Defendants contend that even if they violated plaintiff's constitutional rights, they

14    are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982),

15    which protects government officials from liability for civil damages if a reasonable

16    person would not have known that the conduct violated a clearly established right.  The

17    burden is on defendants to establish that their actions were reasonable.  *Doe v. Petaluma*

18    *City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995).  As the court has explained above,

19    plaintiff produced sufficient evidence to establish a genuine issue of material fact whether

20    defendants Williams and Payne violated his Eighth Amendment right by denying him

21    care for his broken foot for seven days.  This right to appropriate and timely medical care

22    is well established.  *See, e.g.*, *Brown*, 894 F.2d at 1536-37; *Hunt*, 865 F.2d at 200.

23    Defendants Williams and Payne do not explain why they denied plaintiff treatment for his

24    broken foot.  Viewing the evidence in a light most favorable to plaintiff, the court finds

25    that defendants have not met their burden in establishing that their actions were

26    reasonable, and they are not entitled to qualified immunity.[19]

27

28        [19]  Since this court has determined that defendants Anderson, Chudy, Sather, Britt and Curry
are entitled to summary judgment, the court need not discuss whether they would also be entitled
Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd    23

***D.     Referral to Pro Se Prisoner Settlement Program***

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the surviving claims set forth above.  The proceedings will consist of one or more conferences as determined by Magistrate Judge Vadas.  The conferences shall be conducted with defendants, or the representative for defendants, attending by videoconferencing if they so choose.  If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a renewed motion from plaintiff for appointment of counsel.

**CONCLUSION**

1.     Defendants' motion to dismiss for failure to exhaust administrative remedies (docket no. 38) is DENIED.

2.     Defendants' motion for summary judgment (docket no. 38) is GRANTED in part and DENIED in part.  The motion is granted as to all claims against defendants Anderson, Chudy, Sather, Britt and Curry.  Plaintiff has set forth genuine triable issues as to whether (1) defendants Williams and Payne acted with deliberate indifference in failing to treat or administer medication for plaintiff's broken left foot from May 18, 2007 to May 25, 2007; and (2) defendants Williams and Payne were negligent in failing to treat or administer medication for plaintiff's broken left foot from May 18, 2007 to May 25, 2007. Defendants Williams and Payne are not entitled to qualified immunity.

3.     Plaintiff's request to amend his complaint to add Dr. Kalisher as defendant (docket no. 47) is DENIED because such amendment would be futile.

4.     Plaintiff's objection to exhibit A attached to the Declaration of Emily Brinkman in Support of Defendants' Motion to Dismiss and Motion for Summary Judgment (docket no. 39) is OVERRULED.  Plaintiff's objection to exhibit D attached to

to qualified immunity.

1  the Declaration of Emily Brinkman in Support of Defendants' Motion to Dismiss and

2  Motion for Summary Judgment (docket no. 39) is SUSTAINED.  Exhibit D is

3  STRICKEN from the record.  Defendants' objection to exhibit F attached to the

4  Declaration of Daniel Gene Schafer in Support of Plaintiff's Opposition to Defendants'

5  Motion to Dismiss for Failure to Exhaust; and Opposition to Defendants' Motion for

6  Summary Judgment (docket no. 48) is SUSTAINED.  The court did not consider this

7  evidence in its ruling on the motions.  Defendants' objection to evidence regarding

8  defendant Payne's conversation with correctional officers on May 18, 2007 is

9  OVERRULED.

10          5.      The instant case is REFERRED to Magistrate Judge Vadas pursuant to the

11  Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims

12  in this action, as described above.  The proceedings shall take place within **ninety (90)**

13  **days** of the filing date of this order.  Magistrate Judge Vadas shall coordinate a time and

14  date for a settlement conference with all interested parties or their representatives and,

15  within **ten (10) days** after the conclusion of the settlement proceedings, file with the court

16  a report regarding the prisoner settlement proceedings.  If these settlement proceedings to

17  do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel

18  and the court will then set this matter for trial.

19          6.      The clerk of the court shall mail a copy of the court file, including a copy of

20  this order, to Magistrate Judge Vadas in Eureka, California.

21          7.      The instant case is STAYED pending the settlement conference

22  proceedings.

23          This order terminates docket numbers 38, 39, 47, and 48.

24          IT IS SO ORDERED.

25  DATED:  ___6/3/09_____

                                            _Ronald M. Whyte_____
26                                          RONALD M. WHYTE
                                            United States District Judge

27

28

Order Denying Defendants' Motion to Dismiss; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; and Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Schaffer881mtd&msj.wpd   25